UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on April 29, 2005

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. |
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| v. | : | VIOLATIONS: 18 U.S.C. §§ 1001, 2, 208, 216 |
| | : | (False Statements, Causing Acts to be Done, |
| | : | Financial Conflict of Interest) |
| **JOSEPH FERNANDES,** | : | |
| | : | **UNDER SEAL** |
| Defendant. | : | |

# **I N D I C T M E N T**

The Grand Jury charges that:

## **INTRODUCTION**

At all times relevant to this Indictment:

1. Defendant Joseph Fernandes ("FERNANDES") was owner and president of Amtech, Inc., a company located at xxx Xxxxx Xxx Xxxxxx, Xxxxxxxxx, Xxxxxxxx. Amtech, Inc. also conducted business as "Atech, Inc." and "Atech-Amtech, Inc." (hereinafter collectively referred to as "AMTECH").

2. Defendant FERNANDES was also an employee of the United States Environmental Protection Agency ("EPA"), an agency of the executive branch of the United States government, located in the District of Columbia. Defendant FERNANDES was employed as a chemical engineer in the EPA's Fuel Program Support Group, Office of Transportation and Air Quality, in the District of Columbia.

## The Clean Air Act's Registration Program

3. Under Section 211 of the Clean Air Act, Congress authorized EPA to "regulate, control and prohibit the manufacture, introduction into commerce, offering for sale, or sale of any fuel or fuel additive for use in a motor vehicle" if its emission would contribute to air pollution and endanger the public health and welfare. 42 U.S.C. § 7545(a). Section 211 also expressly authorized EPA to implement a registration program for fuel additives and to impose compliance and testing requirements to determine the effect of emissions on the public health and welfare. 42 U.S.C. § 7545(b). Penalties are imposed under the Clean Air Act for violations of the registration requirements. 42 U.S.C. § 7545(d).

4. Pursuant to the above authority, EPA established a registration program for fuel and fuel additives, and promulgated regulations setting forth testing and application requirements which must be complied with prior to manufacturing, selling or offering for sale fuel and fuel additives. 40 C.F.R. § 79. Under these regulations, all fuel additives must be registered with EPA and detailed information must be provided to EPA regarding the chemical composition of the additive. The information must be submitted to EPA on a Fuel Additive Manufacturer Notification Form ("Notification Form").

5. Certain categories of fuel additives are required to be tested prior to registration and the results reported to EPA. Ferrocene, a particular fuel additive containing iron, falls within those categories for which EPA requires testing prior to registration.

6. Once a company registers a fuel additive, other companies may sell or offer for sale the same product under a different label, provided they have registered the re-labeled product with EPA. A re-labeled product means a fuel additive which is registered by its original manufacturer

with EPA and is also registered and sold, unchanged in composition, under a different label and/or by a different entity. 40 C.F.R. § 79.50. Applications to register re-labeled additives need only reference the company from which the originally registered product has been purchased, and must certify that the re-labeled product is 100% the same as the registered product and that no chemical changes have been made. The re-labeled product is not required to undergo the testing that was required of the original product. EPA relies on the representations made on the Notification Forms in its approval process for re-labeled products.

### Confidential Business Information

7. A registration list of fuel additives is maintained by EPA and made available to the public. The chemical composition of the products is not disclosed to the public but is maintained by EPA as Confidential Business Information ("CBI"). Disclosure of CBI by EPA employees is prohibited under 18 U.S.C. § 1905.

8. Some of the information contained in the Notification Forms, such as the chemical make-up of the applicant's products and sales revenues, constitutes CBI under the Clean Air Act. 42 U.S.C. § 7475(b). As a chemical engineer in EPA's Fuel Program Support Group, defendant FERNANDES had access to CBI. Defendant FERNANDES' office was located in what is referred to as the "Confidential Business Unit." This unit has heightened security such as special access cards and stand alone computers.

9. All employees of EPA were required to undergo Information Security Training, which instructed them, among other things, on the prohibition against disclosing CBI. Defendant FERNANDES participated in such training while employed at EPA.

10.     Defendant FERNANDES was primarily responsible for reviewing the Notification Forms and recommending that EPA either approve or disapprove the fuel additive registrations submitted by companies as required under the Clean Air Act.  If approval was recommended, a form letter was mailed by the Director of EPA's Transportation and Regional Programs Division advising the applicant that the product had been registered.  Defendant FERNANDES could also recommend that an application be disapproved because it did not meet the regulatory requirements and recommend that additional testing be conducted of the product based on its chemical composition.

### COUNT 1
False Statements - Scheme to Conceal Material Information
18 U.S.C. § 1001(1)(a) and 18 U.S.C. § 2

11.     Paragraphs 1 through 10 of the Introduction to this Indictment are hereby re-alleged and incorporated as if set forth in full herein.

12.     Beginning in or about September 2001 and continuing through in or about July 2004, in the District of Columbia and elsewhere, defendant FERNANDES, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully conceal and cover up, and cause to be concealed and covered up, by trick, scheme and device, material facts in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, (1) that he was involved in, and had a financial interest in, the manufacturing and marketing of certain fuel additives for which false Notification Forms had been submitted to EPA, and (2) that two fuel additives for which Notification Forms had been submitted to EPA were not in fact re-labels, as falsely stated on the Notification Forms.

Manner and Means of the Scheme

13. It was a part of the scheme that defendant FERNANDES, along with others known and unknown to the Grand Jury, prepared and assisted in preparing false and fraudulent Notification Forms to register fuel additive products with EPA.

*a. The 2001 Notifications*

14. It was further part of the scheme that, in or about September 2001, defendant FERNANDES did fax blank Notification Forms from EPA to an AMTECH representative in India and directed said person to complete five (5) Notification Forms using false information. Specifically, defendant FERNANDES directed said person to provide a false address and contact name for the company, and to not disclose to EPA the fact that defendant FERNANDES had any involvement or financial interest in the products and the company. Had EPA known that defendant FERNANDES was the owner of AMTECH, and that he had a financial interest in the registration of the products, EPA would have rejected the Notification Forms and taken other appropriate action.

15. It was further part of the scheme that defendant FERNANDES directed the AMTECH representative in India to fax the false and fraudulent Notification Forms back to EPA in the District of Columbia.

16. It was further part of the scheme that defendant FERNANDES caused the Notification Forms to be approved by the Director of EPA's Transportation and Regional Programs Division.

17. It was further part of the scheme that defendant FERNANDES then caused approval letters for the five (5) Notification Forms referenced above to be sent through the U.S. Mail to AMTECH at an address in Sacramento, California, when the company was not located at such

address, in an effort to conceal from EPA defendant FERNANDES' involvement in the products and the company.

18.     It was further part of the scheme that in or about September 2001, defendant FERNANDES attempted to sell, and offered for sale, in the United States fuel additive products which had been fraudulently registered with EPA by marketing the five (5) fraudulently registered products referenced above at an Aftermarket Automotive Product Exposition in Nevada (AAPEX) as well as over the Internet.

19.     It was further part of the scheme that defendant FERNANDES did arrange to participate in the AAPEX show referenced above through a third party in order to conceal his business activity from EPA.

### b. The 2002 Notifications

20.     It was further part of the scheme that, in April 2002, defendant FERNANDES did fax blank Notification Forms from EPA in the District of Columbia to an AMTECH representative in West Virginia, and directed said person to complete two (2) Notification Forms using false information. These two Notification Forms referred to fuel additive products identified as Power Tab and Power Granules, containing ferrocene, a regulated chemical. These Notification Forms were false in that they deliberately concealed the fact that defendant FERNANDES had a financial interest in the company and in the products. They were also false in that they stated that the products were re-labels of previously registered products, when in fact they were not. Had EPA known that defendant FERNANDES was the owner of AMTECH and had a financial interest in the products, it would have rejected the Notification Forms and taken other appropriate action. Further, had EPA known that the product was not a re-label of an already registered product, it would have either

rejected the Notification Forms or required testing of the product to determine the impact of its emission on the environment.

21. It was further part of the scheme that defendant FERNANDES directed the AMTECH representative in West Virginia to fax the false and fraudulent Notification Forms back to EPA.

22. It was further part of the scheme that defendant FERNANDES received the false and fraudulent Notification Forms at EPA and caused the products to be registered by the Director of EPA's Transportation and Regional Programs Division.

23. It was further part of the scheme that defendant FERNANDES caused an approval letter for Power Tab and Power Granules to be generated by EPA and signed by the Acting Director of the Transportation and Regional Programs Division.

24. It was further part of the scheme that defendant FERNANDES purchased the ferrocene component of Power Tab and Power Granules from China, and manufactured the products in India, instead of purchasing the products from the company identified on the Notification Forms. By doing so, the products were not re-labels of the products already approved by EPA.

25. It was further part of the scheme that defendant FERNANDES attempted to sell, and offered for sale, in the United States fuel additive products which had been fraudulently registered with EPA, that is, Power Tab and Power Granules.

26. It was further part of the scheme that defendant FERNANDES did aid in the submission of a Notification Form for Dyno-Tab Plus, a product in which he had a financial interest in manufacturing, and that he further facilitated the approval of such Notification Form, all without disclosing his financial interest in the product.

27. It was further part of the scheme that defendant FERNANDES attempted to influence the owners of the company from which he falsely claimed to have purchased Power Tab and Power Granules, and prevented them from reporting to EPA defendant FERNANDES' conflict of interest and false Notification Forms.

28. It was further part of the scheme that, defendant FERNANDES did unlawfully remove from EPA and disclose confidential business information without authorization, that is, information regarding the composition of certain fuel additive products which had been provided by companies in order to register such products, such information having been obtained by defendant FERNANDES through his position at EPA.

(**False Statements and Causing Acts to Be Done**, in violation of Title 18, United States Code, Section 1001(a)(1), and 18 United States Code, Section 2)

## COUNT 2
Conflict of Interest
18 U.S.C. § 208 and 18 U.S.C. § 216

29. Paragraphs 1 through 10 and 13 through 27 above are hereby re-alleged and incorporated herein as if set forth in full herein.

30. From in or about September, 2001 through in or about April, 2004, in the District of Columbia and elsewhere, defendant FERNANDES, while an employee of the executive branch of the United States government, did knowingly and willfully participate personally and substantially in the particular matter in which he, and an organization in which he was serving as an officer, had a financial interest, that is: the defendant, JOSEPH FERNANDES, knowing that he had a financial interest in AMTECH and certain fuel additive products, did participate personally and substantially

in the preparation, submission and approval of the Notification Forms in order to register such products with EPA as required by the Clean Air Act, 42 U.S.C. § 7521 *et seq.*

> (**Financial Conflict of Interest**, in violation of Title 18, United States Code, Section 208(a), and Title 18, United States Code, Section 216(a)(2))

TRUE BILL:


FOREPERSON


Attorney of the United States
and for the District of Columbia